**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ———————————————————————— ) | |
| NANTASKET MANAGEMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 23-13132-MJJ |
| ) | |
| VELOCITY COMMERCIAL CAPITAL, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |
| ———————————————————————— ) | |

**MEMORANDUM OF DECISION**

July 26, 2024

JOUN, D.J.

Plaintiff Nantasket Management, LLC ("Plaintiff" or "Nantasket") brings this action against Velocity Commercial Capital, LLC ("Defendant" or "Velocity") concerning various commercial loans that relate to real estate properties owned by Nantasket in Hull, Massachusetts. In essence, Nantasket has claimed that Velocity abruptly breached a refinancing agreement to lend Nantasket money and surprised Nantasket with sudden foreclosures on the properties, while also demanding excessive fees for a payoff of the commercial loans. To halt the foreclosures, Nantasket filed its Complaint and a Motion for Preliminary Injunction. [Doc. Nos. 1-1, 8]. Velocity has opposed Nantasket's motion and filed a Motion to Dismiss and a Motion for Sanctions. [Doc. Nos. 2, 21]. For the reasons below, Velocity's Motion to Dismiss and Motion for Sanctions are GRANTED, and Nantasket's Motion for Preliminary Injunction is DENIED.

## I.    LEGAL STANDARD

### A.  <u>Motion to Dismiss</u>

In evaluating a motion to dismiss for failure to state a claim, a court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, courts "ignore[] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

Courts "may also consider documents attached to [a] complaint," *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 54 F.4th 42, 48 (1st Cir. 2022), and "the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint[.]" *Clorox Co. Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000). "[G]auging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." *Id.*

### B.  <u>Motion for Preliminary Injunction</u>

A preliminary injunction is an "'extraordinary form of relief' [that] may be granted only upon a showing that the plaintiff 'is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"*Brox v. Hole*, 83 F.4th 87, 91 (1st Cir. 2023)

(quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The moving party bears

the burden of proof for each of these four factors. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108,

120 (1st Cir. 2003).

### C.  <u>Motion for Sanctions</u>

"Civil Rule 11 requires that a motion filer 'certif[y] that to the best of the [filer]'s

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,'

the filing does not offend the rule's commands, . . . [including that]: the filing's 'legal

contentions' must be 'warranted by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law or for establishing new law,' and the filing's 'factual

contentions' must 'have evidentiary support' or a 'likely' prospect of it." *Eldridge v. Gordon

Bros. Grp., L.L.C.*, 863 F.3d 66, 87 (1st Cir. 2017) (citing Fed. R. Civ. P. 11(b)(2)–(3)).

Therefore, "[u]nder Rule 11, a court may impose sanctions on a lawyer for advocating a

frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose."

*In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) (cleaned up).

"In determining whether a lawyer has offended Rule 11, a court generally must use an

objective standard, asking what is reasonable under the circumstances." *Id.* "Factors to be

considered include the complexity of the subject matter, the party's familiarity with it, the time

available for inquiry, and the ease (or difficulty) of access to the requisite information." *Id.*

(cleaned up). "Typically, some degree of fault is required, but the fault need not be a wicked or

subjectively reckless state of mind; rather, an individual must, at the very least, be culpably

careless to commit a violation." *Id.* at 34–35 (cleaned up).

## II.   BACKGROUND

### A.   Relevant Facts[1]

#### 1.   Velocity's Commercial Loans to Nantasket

In October 2016, Nantasket bought six real estate properties on Nantasket Avenue in Hull, Massachusetts (the "Properties"), intending to manage and collect rent on them.[2] [Doc. No. 1-1 at ¶¶ 3, 9, 11]. On February 22, 2019, Velocity made six commercial loans to Nantasket, each for $262,500 (together, the "Loans"). [*Id.* at ¶¶ 14–16]. Nantasket, through its Managing Member, Michael Kim ("Mr. Kim"), executed a promissory note payable to Velocity for each of the Loans (together, the "Notes'). [*Id.*; Doc. No. 3-1].[3] Relatedly, Nantasket alleges that Velocity holds various mortgages on the Properties (the "Mortgages").[4] [Doc. No. 1-1 at ¶ 4].

---

[1] I draw well pleaded facts from the Complaint and its attachments, as well as the parties' filings summarizing them. [Doc. Nos. 1-1, 3, 25]. Except where indicated otherwise, I have accepted these facts as true for the purposes of the Motion to Dismiss, while disregarding mere legal conclusions or speculative statements in the Complaint. *See Sonoiki*, 37 F.4th at 703.

[2] While Nantasket bought two other properties on Nantasket Avenue at this time, Nantasket later sold them in May 2021, [Doc. No. 1-1 at ¶¶ 9, 23], and they are not material to the Complaint's claims.

[3] I consider the Notes submitted by Velocity in connection with the Motion to Dismiss because the Complaint references them, [Doc. No 1-1 at ¶¶ 14–16], and they are central to Nantasket's claims. *See Sterngold Dental, LLC v. HDI Glob. Ins. Co.*, 929 F.3d 1, 6 (1st Cir. 2019) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998))); *Pitta v. Medeiros*, 90 F.4th 11, 14 n. 2 (1st Cir. 2024) ("On a motion to dismiss, [courts] may consider documents which are of undisputed authenticity, official public records, central to the plaintiff's claim, or sufficiently referred to in the complaint." (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993))). Indeed, Nantasket has not challenged the authenticity of these materials or provided any specific grounds for them not to be considered.

[4] Velocity disputes this, stating that it assigned the Loans to a third-party assignee, "U.S. Bank National Association, as Trustee for Velocity Capital Loan Trust 2019-2" (or "U.S. Bank"), which became sole owner and the holder of the Notes and Mortgages," with Velocity having no interest in them as of September 2020. [Doc. No. 3 at 4]. Velocity explains its involvement in the Complaint's events from then on as only servicing the loans. [*Id.* at 5 n.9]. In support of these claims, Velocity has submitted the Mortgages, the alonges to the Notes, and the assignments of the Mortgages. Velocity argues that all these materials may be considered in connection with the Motion to Dismiss because the Mortgages and assignments of them have been recorded in the Plymouth County Registry of Deeds and are a matter of public record, [Doc. No. 3 at n.5, 4 n.7], and the alonges are central to Nantasket's allegations, [*id.* at 3 n.4, 4 n.6]. Nantasket has failed to provide a colorable basis to contest these claims or challenge the authenticity of these materials outside the Complaint. Regardless, I decline to consider the materials as unnecessary for resolution of the Motion to Dismiss.

### 2. Nantasket's Default and the Repayment Modification

In 2020, Nantasket defaulted on the Loans by failing to make payments on the Notes when due. [*Id.* at ¶¶ 18–22, 25]. Generally, Nantasket relied on rent from the Properties to make its Loan payments, but many of Nantasket's tenants stopped paying rent due to eviction moratoriums during the COVID-19 pandemic. [*Id.* at ¶¶ 18–22]. Subsequently, Nantasket and Velocity entered an agreement to modify Nantasket's repayment in 2020 or 2021.[5]

### 3. The Conditional Approval of Further Refinance Loans

After making payments on the Notes from April through September 2021, Nantasket again stopped its payments. [*Id.* at ¶¶ 30–33]. Struggling to pay because tenants were still not paying rent under ongoing eviction moratoriums, Nantasket presented a plan to build and sell new modular homes on the Properties. [*Id.* at ¶¶ 31–36]. By late January 2022, Velocity conditionally approved an application by Mr. Kim for further refinancing loans (the "Conditional Refinance"). [*Id.* at pp. 27–51; *see also id.* at pp. 28, 32, 36, 40, 44, 48 ("[W]e are pleased to inform you that we have accepted your application and have conditionally approved your loan[.]")]. The terms of these conditional loan approvals are detailed in several documents attached to the Complaint, including the "Conditional Terms Sheet[s]," "Credit Authorization Form[s]," "Disclosure Statement[s] and Acknowledgement[s] for Business Purpose Loans" (the "Disclosure Statements)." [*Id.* at pp. 27–51].

---

[5] Nantasket alleges that "on or about July 9, 2020," Nantasket and Velocity entered a "Forbearance Agreement" concerning the Loans. [Doc. No. 1-1 at ¶¶ 27–29]. Velocity disputes this, however, submitting that "[n]o such agreement exists that was executed in July 2020," and Nantasket meant to reference repayment plan agreements executed by Nantasket and U.S. Bank in April 2021. [Doc. No. 3 at 4–5, 4 n.8 (citing Doc. No. 3-5)]. In support of its position, Velocity argues the repayment plan agreements it invokes may be considered in connection with the Motion to Dismiss because the Complaint references them, and they are central to Nantasket's claims and allegations concerning the Loans. [*Id.* at 4 n.8]. Again, Nantasket does not appear to provide any specific grounds to contest this or challenge the authenticity of the repayment plan agreements submitted by Velocity. In any event, I decline to consider these materials as unnecessary for the resolution of the Motion to Dismiss.

In connection with this Conditional Refinance, on November 22, 2021, Nantasket entered an agreement with a modular home builder, Hybrid Built Home, LLC, to construct homes on the Properties. [*Id.* at ¶ 41, pp. 18–26]. Shortly after January 31, 2022, Velocity hired a closing agent. [*Id.* at ¶ 43]. Later, Nantasket received conditional pre-approval with "Proposed Preliminary Loan Terms" for a construction loan from another company, Investor's Source, LLC. [*Id.* at ¶ 44, pp. 53–55].

Nantasket also complied with some requests relating to the Conditional Refinance. [*Id.* at ¶ 45]. The closing agent asked around July 5, 2022, that an attachment recorded by a Nantasket tenant be dissolved. [*Id.* at ¶ 46]. Nantasket hired counsel that completed the dissolution of the attachment on November 16, 2022. [*Id.* at ¶¶ 47–48]. On July 8, 2022, Nantasket obtained approval for its building plans. [*Id.* at ¶ 49]. Nantasket informed Velocity when the Properties' title was cleared and Nantasket tried to schedule a closing date. [*Id.* at ¶ 50].[6]

#### 4. <u>Velocity's Denial of the Conditional Refinance Loans</u>

On December 6, 2022, Velocity sent Nantasket six "Statement[s] of Credit Denial, Termination, or Change," stating that Nantasket's request for the Conditional Refinance loans had been denied. [*Id.* at ¶ 51, pp. 104–21]. At the time, Velocity had also scheduled foreclosures on Nantasket's Properties for December 7, 2022. [*Id.* at ¶¶ 52–53].

Nantasket states that it "was taken by surprise," given its actions to prepare for closing the Conditional Refinance, and "email and phone conversations with Velocity's Chief Operating Officer indicat[ing] that the transaction would proceed." [*Id.* at ¶¶ 54–55]. Moreover, Nantasket has alleged that before sending the denial letters, Velocity had never communicated any change

---

[6] While the Complaint indicates that this occurred around July 8, 2022, it is clear that the Complaint meant that it occurred around November 16, 2022. [*See* Doc. No. 1-1 at ¶¶ 48–50; Doc. No. 25 at 4].

of position or lack of intention to proceed with the Conditional Refinance, or a concern with Nantasket's finances or ability to repay the loan.[7] [*Id.* at ¶¶ 56–58].

### 5.   The Bankruptcies

On December 6, 2022, Nantasket filed a Chapter 11 bankruptcy petition, triggering an automatic stay of the foreclosures. [*Id.* at ¶ 61]. Velocity provided Nantasket with a payoff letter on January 17, 2023, which Velocity updated on July 5, 2023. [*Id.* at ¶¶ 62–63, 65]. On July 5, 2023, the Chapter 11 bankruptcy was dismissed without prejudice. [*Id.* at ¶ 64].

After a failed settlement attempt, Nantasket filed another Chapter 11 bankruptcy petition on August 11, 2023.[8] [*Id.* at ¶¶ 66–68]. Then, Nantasket consented to a motion by the Chapter 11 Trustee to dismiss that bankruptcy, leading to its dismissal on November 17, 2023. [*Id.* at ¶¶ 70, 72–73].

### 6.   The Recent Foreclosures

Velocity noticed foreclosures on the Properties for December 27, 2023. [*Id.* at ¶ 74]. A payoff amount provided by Velocity included at least $110,000 in charges for late fees, attorneys' fees, and other fees, which Nantasket disputes. [*Id.* at ¶¶ 75–81]. Nantasket seeks to stay Velocity's foreclosure efforts until Nantasket can close on a refinancing with Velocity, become current on payments to Velocity, or pay off Velocity through financing with another lender. [*Id.* at ¶ 82].

---

[7] Velocity disputes Nantasket's allegations relating to when Velocity notified Nantasket that the Conditional Refinance had been denied. *See infra*, Section III.C.1.a. While I consider these allegations as true for purposes of the Motion to Dismiss, I address their veracity in connection with the Motion for Sanctions.

[8] While Nantasket filed an additional bankruptcy petition, I do not consider it on the Motion to Dismiss given the Complaint does not raise it and, in any event, it bears no relevance to the motion. *See infra*, Section III.C.1.b.

B. **Procedural History**

On or about December 11, 2023, Nantasket filed an action in the Massachusetts Superior Court of Plymouth County, bringing claims against Velocity for breach of contract (Count I), promissory estoppel (Count II), breach of implied covenant of good faith and fair dealing (Count III), and unfair and deceptive business practices (Count IV). [Doc. No. 1-1]. On or about that day, Nantasket also filed a Motion for Preliminary Injunction in the action. [Doc. No. 1 at 1]. Before the motion was heard, Velocity removed the case to this Court on December 19, 2023. [*Id.*]. That same day, Velocity filed a Motion to Dismiss the Complaint in its entirety. [Doc. No. 2].

On December 20, 2023, Nantasket filed a Motion for Preliminary Injunction. [Doc. No. 8]. That day, the Court entered a briefing schedule for the two motions, while restraining and enjoining Velocity from conducting a foreclosure sale of the Properties. [Doc. No. 9]. Later that day, Velocity filed an Opposition to the Motion for Preliminary Injunction. [Doc. No. 10].

On January 11, 2024, the Court granted the Motion to Dismiss due to the lack of any opposition filed by Nantasket on the applicable deadline. [Doc. No. 18]. On January 22, 2024, the Court granted Nantasket's Motion to Vacate the dismissal of the case and the Court restored the prior order restraining and enjoining Velocity from conducting a foreclosure sale. [Doc. No. 23].

On January 22, 2024, Velocity filed a Motion for Sanctions against Nantasket, its counsel, Attorney Stephen T. David ("Attorney David"), and Attorney David's law firm, the Law Office of Stephen T. David, P.C. (or the "Firm"). [Doc. No. 21]. Nantasket filed an Opposition to the Motion to Dismiss on January 23, 2024, [Doc. No. 25], and an Opposition to the Motion for Sanctions on February 5, 2024, [Doc. No. 27]. Velocity filed a Reply in support of its Motion to

Dismiss on January 29, 2024, [Doc. No. 26], and a Reply in support of its Motion for Sanctions on February 12, 2024, [Doc. No. 28].

The Court held a hearing on the Motion to Dismiss, Motion for Preliminary Injunction, and Motion for Sanctions on February 15, 2024, at 11:00 a.m. [Doc. No. 29].

## III.  ANALYSIS

### A.  <u>The Sufficiency of Nantasket's Claims</u>

#### 1.  <u>Breach of Contract</u>

Nantasket alleges that Velocity breached a purported "Streamline Refinance," loan agreement by not providing loan funds to Nantasket. [Doc. No. 1-1 at ¶¶ 83–88]. Specifically, Nantasket claims that the Conditional Refinance loans were in fact "approved" loans and loan offers that Nantasket accepted. [*Id.* at ¶¶ 38–40, 42.  Denying that such an agreement occurred, Velocity responds by highlighting express disclaimers and other statements in the very Conditional Refinance documents that Nantasket claims to have formed a contract:

- The titles of the Conditional Terms Sheets, describe proposed loan terms as *conditional*, [*id.* at pp. 28, 32, 36, 40, 44, 48];

- The Conditional Terms Sheets state that their proposed loan terms were only "conditionally approved" by Velocity, that they "do not represent a promise to lend," that they are "subject to [Velocity's] underwriting, appraisal review, and quality control standards," that a "decision to approve [Nantasket's] loan application can only be made by [Velocity's] credit department upon completion of [its] internal underwriting process," and that "the execution of [each Conditional Terms Sheet] by Michael Kim is a request to [Velocity] to commence the loan underwriting process," [*id.*];

- The Credit Authorization Forms state that "[i]f your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial" upon a request made "within 60 days from the date you are notified of [the] decision," [*id.* at pp. 29, 33, 37, 41, 45, 49]; and

- The Disclosure Statements state that "[y]ou have applied, or expressed interest in applying, for a business-purpose mortgage loan," [*id.* at pp. 30, 34, 38, 42, 46, 50], and that "[i]f you obtain this loan, you will be required to make representations in the loan documents," [*id.* at pp. 31, 35, 39, 43, 47, 51].

The unambiguous language of these documents plainly demonstrates that Velocity did not agree to lend money to Nantasket or promise to do so, and that the documents did not grant Mr. Kim final approval for a refinancing loan.[9] *See Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 n.4 (1st Cir. 2009) (rejecting plaintiff's assertion when the "document [plaintiff] relie[d] on for th[e] assertion directly contradict[ed] it"); *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("[I]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). Nantasket fails to raise any meaningful dispute on these scores.[10] Therefore, I will dismiss this claim.

---

[9] Nantasket does not specifically respond to Velocity's argument that California law applies to claims based on the Conditional Terms Sheets because they contain a provision choosing California as the law governing them. Therefore, Nantasket appears to concede the point. Even were Massachusetts law to be applied, the analysis would not materially differ.

[10] While Nantasket vaguely invokes alleged statements by Velocity's Chief Operating Officer that the Conditional Refinance would proceed, the Complaint lacks sufficient detail to raise any plausible breach of contract claim based on these unspecified statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In any event, Velocity is correct that any reliance on such statements would be unreasonable given the content of the relevant documents. [Doc. No. 26 at 4 n.2]; *see Trifiro v. New York Life Ins. Co.*, 845 F.2d 30, 33 (1st Cir. 1988) ("The conflicting content of [an] oral statement with [a] written statement (the conflict of the statement that approval was certain with the statement that it was uncertain) should have placed petitioner on notice that he should not rely on either statement."). I address Nantasket's related promissory estoppel argument in Section III.A.2.

###     2.   **Promissory Estoppel**

Nantasket also brings a claim for promissory estoppel. In reliance on Velocity's purported approval of the Conditional Refinance and later communications from Velocity relating to it, Nantasket claims to have prepared for closing the loans—including by entering a contract and loan approval process for home building and removing an attachment to the Properties—such that Velocity should be estopped from withholding refinancing funds and foreclosing on the Properties. [Doc. No. 1-1 at ¶¶ 89–99]. Velocity responds that Nantasket has not plausibly alleged a key ingredient for promissory estoppel: reasonable reliance on a clear and unambiguous promise. [Doc. No. 3 at 12]. Because the relevant documents' plain language precludes any promise to lend, Velocity argues that relying on them for the existence of a contract to lend would be unreasonable. [*Id.*]. I agree. *See supra*, Section III.A.1; *White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1113–14 (E.D. Cal. 2016) (dismissing promissory estoppel claims under California law; because defendants' conditional promises concerning a loan modification were not "clear and unambiguous," they "could not have [been] reasonably relied upon"); *Sunningdale Ventures, Inc. v. Martin*, No. 13-cv-12512, 2018 WL 1582554, at *9– 10 (D. Mass. Mar. 31, 2018) (noting that promissory estoppel under Massachusetts law, known as "detrimental reliance," requires that "reasonable reliance" and "a promise that is definite and certain" be shown (cleaned up)).[11] Here too, I will dismiss the promissory estoppel claim.

###     3.   **Breach of Good Faith and Fair Dealing**

Next, Nantasket has claimed that Velocity breached a covenant of good faith and fair dealing implied in the Conditional Refinance. Specifically, Velocity allegedly breached such a

---

[11] Putting aside the vagueness of Nantasket's allegation that unspecified communications from Velocity's Chief Operating Officer indicated the Conditional Refinance would proceed, reliance on such statements could not be reasonable in light of the conflict between them and the relevant documents. *See supra*, footnote 11.

covenant by *first*, not lending certain money to Nantasket; and *second*, charging Nantasket excessive fees and expenses in connection with Nantasket's default on the Loans. In response, Velocity argues that the first claim fails because no underlying contract ever existed that could imply a covenant of good faith and fair dealing. As for the second claim, Velocity disputes that it has held any note or mortgage on the Loans during a relevant timeframe, so Velocity could not have charged the disputed fees, they have not been payable to Velocity, and no contract otherwise exists with Velocity concerning the Loans such that a covenant of good faith and fair dealing could be implied—let alone breached. In addition, Velocity maintains that the Complaint lacks sufficient factual details to plausibly allege that the amount of charged fees violate a relevant contract.

Given that no "Streamlined Refinance" contract ever formed between the parties, Nantasket's claim for breach of a covenant of good faith and fair dealing implied in such a contract fails. *See supra*, Section III.A.1; *Klembeck v. GTE Corp.*, 32 F. App'x 410, 411 (9th Cir. 2002) (unpublished) (affirming dismissal of claim for breach of the implied covenant of good faith and fair dealing because "there was no contract to which an implied covenant of good faith and fair dealing could attach"); *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) ("Having concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties."). And Nantasket failed to allege sufficient factual details to plausibly show that any fees were excessive enough to violate any covenant of good faith and fair dealing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a pleading fails if "it tenders naked assertions devoid of further

factual enhancement" or "offers labels and conclusions or a formulaic recitation of the elements of a cause of action").[12] I will dismiss these claims.

### 4.  **Unfair and Deceptive Practices**

Lastly, Nantasket alleges that Velocity engaged in unfair and deceptive practices under Chapter 93A by charging excessive interest and fees, and stringing Nantasket along with the purported "Streamline Refinance" loan before denying it and proceeding to a foreclosure process on the Loans within a day. [Doc. No. 1-1 at ¶¶ 105–09; Doc. No. 25 at 9–10]. Velocity has countered that *first*, to the extent this claims relies on the same grounds as Nantasket's other claims, it falls in tandem with them; and *second*, even as alleged, Velocity's conduct does not plausibly rise to the required "level of 'commercial extortion' or a similar degree of culpable conduct," [Doc. No. 3 at 14 (quoting *City of Revere v. Bos./Logan Airport Assocs., LLC*, 416 F. Supp. 2d 200, 209 (D. Mass. 2005) (cleaned up)]).

Velocity neither contracted to lend to Nantasket, nor promised to do so. *See supra*, Section III.A.1–2. This suffices to dispose of Nantasket's Chapter 93A claim, as the Complaint simply does not otherwise make out a plausible case that Velocity strung Nantasket along or that Velocity engaged in anything like commercial extortion. *See Gattineri v. Wynn MA, LLC*, 93 F.4th 505, 511 (1st Cir. 2024) ("[I]f a Chapter 93A claim is derivative of other claims which fail as a matter of law, the Chapter 93A claim must also fail." (cleaned up)). To the extent Nantasket has rested its claim on fees being excessive, the Complaint lacks the details needed to plausibly

---

[12] By not responding to Velocity's disavowal of any contract between it and Nantasket as to the Loans, Nantasket also apparently concedes the point, which would also preclude any other claim against Velocity for breaching a covenant of good faith and fair dealing.

allege this—much less that the fees constitute unfair and deceptive practices under Chapter 93A.[13] *See supra*, Section III.A.3; *Iqbal*, 556 U.S. at 678. I will dismiss the Chapter 93A claim.[14]

### B. <u>Preliminary Injunctive Relief</u>

Given the Complaint's failure to state any plausible claim, I will deny Nantasket's Motion for a Preliminary Injunction as moot.

### C. <u>Sanctions</u>

Velocity has moved for Rule 11 sanctions against Nantasket, Attorney David, and Attorney David's Firm.[15] [Doc. No. 21]; *see In re Ames*, 993 F.3d 27, 34–35 (1st Cir. 2021) ("Under Rule 11, a court may impose sanctions on a lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." (cleaned up)). *First*, Velocity challenges the Complaint for bringing frivolous claims premised on the Conditional Refinance documents constituting a binding loan approval and agreement to lend. *Second*, Velocity contends that Nantasket and Attorney David made false allegations about when Velocity gave notice that it had denied the Conditional Refinance. *Third*, Velocity argues that Nantasket pursued the Complaint to improperly prevent the foreclosure sales of the Properties. In response, Nantasket stands by its claims and allegations, denying any impropriety in its purpose to stop the foreclosure sales.

---

[13] In any event, Nantasket appears to concede that Velocity did not hold loans by which it could charge the fees at issue to Nantasket. *See supra*, footnote 12.

[14] I do not reach Velocity's other arguments in support of its Motion to Dismiss.

[15] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). No exceptional circumstances having been raised, I will hold Attorney David's firm jointly responsible for any Rule 11 violation that Attorney David has committed.

1.  **Relevant Facts**

In support of its Motion for Sanctions, Velocity submitted the following facts, which I find to be credible.[16]

a.  **The Communications About the Conditional Refinance**

After Nantasket defaulted on the Loans in August 2020, [Doc. No. 11 at ¶ 13], the holder of the Note, the U.S. Bank National Association, as Trustee for Velocity Commercial Loan Trust 2019-2 ("U.S. Bank" or the "Note Holder"), had its counsel send Nantasket and Mr. Kim notice on January 5, 2021, that it had accelerated the Loans due to non-payment and would be noticing foreclosure auctions,[17] [Doc. No. 12 at ¶¶ 6, 10; Doc. No. 12-1]. When Nantasket defaulted on subsequent repayment plan agreements, the Note Holder's counsel sent Nantasket and Mr. Kim a similar notice, indicating that a foreclosure auction would be scheduled for February 3, 2022. [Doc. No. 11 at ¶¶ 16–17; Doc. No. 12 at ¶ 14; Doc. No. 12-2]. On January 28 and 31, 2022, when Velocity issued Nantasket the Conditional Terms Sheets to Mr. Kim "for discussion purposes," Velocity indicated it "would consider making Mr. Kim new loans to refinance the existing defaulted Loans." [Doc. No. 11 at ¶ 19].

In October 2022, Velocity terminated the refinancing discussions with Nantasket for various reasons, including: a lack of consistent communication from Mr. Kim, a high loan to value ratio for the loans, unresolved attachments recorded on the Properties by two tenants, a judicial finding that Nantasket had allowed the Properties to become uninhabitable, the discovery of Mr. Kim's involvement in the bankruptcy of another real estate project and several lawsuits

---

[16] Notably, Nantasket, Attorney David, and his Firm declined to oppose the Motion for Sanctions with any evidentiary proffer beyond the Complaint.

[17] Velocity submitted evidence that U.S. Bank is the Note Holder. *See supra*, footnote 4; [Doc. No. 11 at ¶¶ 11–12; *e.g.*, Doc. No. 11-3 at 2–3].

resulting in court-imposed sanctions. [Doc. No. 11 at ¶¶ 18–19, 22–23; Doc. No. 12 at ¶¶ 21–23].

On October 10, 2022, a Velocity account executive notified Mr. Kim that Velocity was "not able to move forward" with the refinancing loans. [Doc. No. 13 at ¶¶ 5–6]. Then, on October 17, 2022, an attorney for Velocity sent Nantasket a letter, stating that "Velocity has denied your request that it refinance the loans," and that he had been hired to resume the foreclosure process. [Doc. No. 11 at ¶ 24; Doc. No. 12 at ¶ 24; Doc. No. 12-6]. When Mr. Kim emailed Velocity on November 4, 2022, to report that attachments on the Properties were being dissolved, Velocity responded to Mr. Kim the next business day: "[y]our refi with Velocity has been cancelled. You will need to submit a new loan approval. As a reminder, Sale Date is 12/7/2022." [Doc. No. 11 at ¶ 26; Doc. No. 11-12 at 2–4.].

Velocity scheduled foreclosure auctions of the Properties for December 7, 2022. [Doc. No. 11 at ¶ 25; Doc. No. 12 at ¶¶ 25–26]. On November 15, 2022, Velocity sent Nantasket and Mr. Kim mandatory statutory foreclosure notices about the auctions. [*Id.* at ¶ 26; Doc. No. 12-7; Doc. No. 12-8]. Mr. Kim's attorney, Attorney David, returned this letter and related documents to Velocity's attorney, stating that he did not represent Mr. Kim regarding the foreclosures. [Doc. No. 12 at ¶ 28; Doc. No. 12-9]. The discharges of Nantasket's tenants' judgments were recorded with the Plymouth County Registry of Deed on November 16, 2022. [Doc. No. 12 at ¶ 27]. On December 6, 2022, Velocity sent formal loan denial letters to Mr. Kim. [Doc. No. 11 at ¶ 27].

### b.  Nantasket's Bankruptcies

A bankruptcy court dismissed Nantasket's first Chapter 11 bankruptcy petition (filed on December 6, 2022), because Nantasket's counsel withdrew, and no successor counsel appeared. [Doc. No. 12 at 29–33]. The Note Holder rescheduled auctions of the Properties for July 13,

16

2023. [*Id.* at ¶ 34]. On July 12, 2023, Nantasket filed a pro se, second Chapter 11 bankruptcy

petition, preventing the foreclosure auctions from proceeding. [*Id.* at ¶ 38]. Six days later, the

bankruptcy court dismissed the second bankruptcy due to Nantasket's failure to retain counsel.

[*Id.* at ¶¶ 39–40].

After the Note Holder again rescheduled the auctions of the Properties for August 14,

2023, Nantasket filed a third Chapter 11 bankruptcy petition on August 11, 2023. [*Id.* at ¶¶ 41–

42]. The Chapter 11 Trustee filed an expedited motion to dismiss this third bankruptcy, stating

that "there was no true bankruptcy purpose for the filing of this petition." [*Id.* at ¶¶ 48–49].

When Nantasket effectively did not object to the motion, the bankruptcy court dismissed the

third bankruptcy. [*Id.* at ¶¶ 50–51].

The Note Holder then scheduled foreclosure auctions of the Properties for December 27,

2023, with notice sent to Nantasket and Mr. Kim on November 29, 2023. [*Id.* at ¶¶ 53–54].

### c. **Velocity's Counsel Warns Attorney David that Nantasket's Draft Complaint Contained False Allegations**

On July 11, 2023, Mr. Kim emailed Velocity a draft complaint with claims against

Velocity for breach of contract, promissory estoppel, and breach of the covenant of good faith

and fair dealing. [*Id.* at ¶ 35]. In essence, the draft complaint alleged that the Conditional

Refinance constituted a final loan approval and a binding agreement to refinance Nantasket's

Loans. [Doc. No. 12-10 at ¶¶ 39–42]. The draft complaint also claimed that Velocity first

notified Nantasket and Mr. Kim that it had cancelled the refinancing in December 2022, after

Nantasket notified Velocity in November 2022 that the tenant liens had been dissolved. [*Id.* at ¶¶

45–57].

On July 12, 2023, Velocity's counsel sent a letter to Attorney David, stating that the draft

complaint's allegations were "without merit." [Doc. No. 12 at ¶ 37]. This letter highlighted that

Velocity had notified Nantasket on October 17, 2022, that the refinancing had been denied. [*Id.*]. In addition, Velocity's counsel told Attorney David that the Conditional Terms Sheets did not constitute a binding agreement or a loan approval. [*Id.*].

After Nantasket indicated that it would sue to enjoin any foreclosure of the Properties, Velocity's Counsel sent another letter to Attorney David on November 20, 2023. [*Id.* at ¶ 52]. Again, Velocity's Counsel warned Attorney David that the draft complaint had included "demonstrably" and "categorically false" allegations. In addition, Velocity's Counsel reiterated that Velocity had denied Mr. Kim's refinancing application in October 2022. [*Id.*].

## 2. Procedural Requirements

As a threshold matter, Rule 11 requires that "a party's motion for sanctions 'must' be served on all parties as required by Rule 5[,] . . . . [and it] 'must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.'" *Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 447 (1st Cir. 2022) (quoting Fed. R. Civ. P. 11(c)(2)); *see also* Fed. R. Civ. P. 5 (setting out requirements for service and filing of post-complaint papers). Before filing the Motion for Sanctions on January 22, 2024, Velocity's Counsel effected its service upon Attorney David on December 19, 2023. [Doc. No. 21 at 3]. Nantasket does not dispute this or that Velocity has met Rule 11(c)(2)'s requirements. Therefore, I conclude that Velocity complied with Rule 11's procedural requirements.[18]

---

[18] Although neither party has raised the issue, I note that "[t]he Federal Rules of Civil Procedure do not apply to state court proceedings." *Triantos*, 52 F.4th at 446 (citing Fed. R. Civ. P. 81(c)(1)). So, "[a]n individual cannot be subject to Federal Rule 11 sanctions for conduct in state court." *Id.* This means neither Nantasket nor Attorney David may be sanctioned under Rule 11 for their initial filing of the Complaint in Massachusetts Superior Court. Because Nantasket and Attorney David refiled the Complaint after its removal in support of their Motion for Preliminary Injunction, [Doc. No. 8-1 at 1–12], moved to vacate the dismissal of the Complaint, [Doc. No. 20], and then defended the Complaint in opposing Velocity's Motion to Dismiss, [Doc. No. 25], however, they are subject to Rule 11 sanctions concerning the Complaint.

### 3.  <u>Frivolous Legal Theories</u>

I have already concluded that there was no agreement for Velocity to make any loans to Nantasket, resulting in the failure of most all the Complaint's claims. *Supra*, Section III.A. The argument was not just weak, it was plainly unmeritorious—or in other words, frivolous. *See Ames*, 993 F.3d at 34–35 ("A claim is frivolous when it is either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law." (cleaned up)). It gets worse. As discussed, in late January 2022, Velocity had conditionally approved Mr. Kim's application for refinancing loans. Despite the actual titles of the Conditional Refinance documents, in a deliberate attempt to mislead, Attorney David repeatedly referred to it as a "Streamlined Refinance" loan agreement in making out the frivolous legal theory that Velocity had entered a binding agreement with Nantasket and then failed to provide the loan funds. [Doc. No. 8-1 at 1–12].

Considering the *Ames* factors, no reasonable attorney would prosecute or defend the Complaint based on the legal theory that the Conditional Refinance documents were an actual agreement to lend. *Ames*, 993 F.3d at 34–35 (explaining that in assessing "what is reasonable under the circumstances" courts should consider factors, including "the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information" (cleaned up)). Attorney David was evidently quite familiar with the subject matter, including through his direct involvement in underlying events put at issue by the Complaint. No issue has been raised about access to relevant information. And Velocity's Counsel repeatedly warned Attorney David over months that the fairly simple claims based on this legal theory lacked merit. At a minimum, Attorney David has chosen to prosecute and defend these frivolous claims with "culpabl[e] careless[ness]." *Ames*, 993 F.3d at 34–35;

[Doc. No. 27 at 3 (continuing to claim that "[Velocity] stated . . . it could offer [Nantasket] a 'Streamlined Refinance,'" and Nantasket "accepted the offer," resulting in "the Streamlined Refinance Loan approval")]. His attempts to justify these frivolous claims fail to pass muster.[19] Accordingly, I will grant sanctions against Attorney David and his Firm for presenting frivolous claims to the Court.

### 4.  **False Allegations**

The Complaint also relied on allegations that before December 2022, "[Velocity] never communicated to [Nantasket] that [it] no longer intended to proceed with the refinance." [Doc. No. 8-1 at p. 6, ¶ 56; *see also id.* at p. 5, ¶ 51]. This was false. Velocity has submitted clear evidence to the contrary. On October 10, 2022, Velocity notified Mr. Kim that it was "not able to move forward" with the refinancing loans. [Doc. No. 13 at ¶¶ 5–6]. On October 17, 2022, Velocity's Counsel sent Mr. Kim a letter by email and first-class mail, stating, "Velocity has denied your request that it refinance the loans." [Doc. No. 11 at ¶ 24; Doc. No. 12 at ¶ 24]. Then, after Mr. Kim emailed Velocity on November 4, 2022, from the same email address to which the October 2022 letter was sent, Velocity responded the next business day, reiterating: "Your refi with Velocity has been cancelled." [Doc. No. 11 at ¶ 26]. On November 15, 2022, Velocity sent Nantasket and Mr. Kim notices about scheduled foreclosures of the Properties, and Attorney David replied to the letter. [Doc. No. 12 at ¶¶ 25–26, 28].

In response to Velocity's evidence, Nantasket and Attorney David have offered nothing but implausible excuses. [Doc. No. 27 at 9]. Simply put, their vague reference to unevidenced

---

[19] For the reasons I have already discussed, *supra*, Section III.A.2, Nantasket's promissory estoppel argument, [Doc. No. 27 at 5–7], plainly lacks merit. So too, does Nantasket's attempt to characterize Velocity's conduct—including a request to remove an attachment on the properties, hiring a closing agent, and unspecified communications from Velocity's Chief Operating Officer—as sufficient to support promissory estoppel. These claims simply fail to present any "debatable inference" or "colorable legal argument," *Roger Edwards, LLC*, 437 F.3d at 143, under the case law or for a nonfrivolous extension of it, *see* Fed. R. Civ. P. 11(b)(2).

and unspecified communications from a Velocity employee is not a get-out-of-sanctions-free card.[20] Whatever explanations Attorney David may have received from his client, Attorney David does not deny that he personally received the letter notice of November 15, 2022, and replied to it. Then, Velocity's Counsel raised the falsity of the allegations with Attorney David, at least three times, before filing the Motion for Sanctions. [*Id.* at ¶¶ 37, 52; Doc. No. 21 at 3].

The failure to withdraw or correct these allegations was egregious. *See Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55, 64 (1st Cir. 2022) ("Rule 11(b) prohibits the assertion of factual allegations without evidentiary support" when "a lawyer who makes an inaccurate factual representation . . . at the very least, [is] culpably careless" (cleaned up)); *Samra v. PHH Mortg. Corp.*, 408 F. Supp. 3d 3, 4 (D. Mass. 2019) (determining that plaintiff violated Rule 11 by "fil[ing] a [c]omplaint containing unsupported factual allegations," including allegations that contradicted documentary evidence submitted to the court). Nantasket and Attorney David, however, took yet additional steps by continuing to present the falsehoods, not only in their Opposition to the Motion for Sanctions, but also pressing the falsehoods at the hearing on the motion. [Doc. No. 27 at 4 (claiming that before December 2022 "[Velocity] itself never communicated to [Nantasket] that [Velocity] no longer intended to proceed with the finance, . . . and never communicated to [Nantasket] that [Velocity] had changed its position on the refinance")]. This surely implicates professional ethics violations for Attorney David. *See e.g.*, *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 247 (D. Mass. 2020) (finding that an attorney violated Massachusetts Rules of Professional Conduct 3.3(a) & 8.4(c)

---

[20] Nantasket's attempts to dismiss the letter of October 17, 2022, by invoking unevidenced and unspecified communications to the contrary, the fact that the letter came from an attorney for Velocity but not directly from Velocity, and the absence of any formal refinancing denial letter having been sent before December 6, 2022, all plainly fail. [Doc. No. 27 at 9]. Regardless of these claims, the letter of October 17, 2022, clearly establishes that Nantasket could not reasonably expect that the Conditional Refinance would go forward. *See supra*, Section III.A.2.

by knowingly failing to correct material misstatement of fact in a declaration). I will grant sanctions against Nantasket, Attorney David, and the Firm for knowingly presenting falsehoods to the Court.

### 5. **Improper Purpose**

Given that the Complaint's claims were almost entirely frivolous,[21] a fair inference may be drawn that Nantasket had filed the Motion for Preliminary Injunction, moved to vacate the Complaint's dismissal, and opposed dismissal of the Complaint to improperly stop foreclosure auctions of the Properties. This inference is strengthened by Nantasket's broader pattern of filing questionable bankruptcy petitions on the eves of the scheduled foreclosure sales. [Doc. No. 12 at ¶¶ 29–51]. Likewise, the checkered litigation history of Nantasket's principal, Mr. Kim, reinforces further the inference of improper motive. [Doc. No. 12-5]. I find that Nantasket and Attorney David prosecuted and defended the Complaint to improperly delay the foreclosure auctions, and I will sanction Nantasket, Attorney David, and the Firm accordingly. *See Pathe Computer Control Sys. Corp. v. Kinmont Indus., Inc.*, 955 F.2d 94, 96 (1st Cir. 1992) (affirming sanctions based on the filing of a motion, because "the timing of the motion [was] consistent with a last minute [plaintiff] effort to delay" and plaintiff failed to contemporaneously "present to the district court . . . any plausible reason" that a required element for the motion had been satisfied, which "tends to support [the] court's belief that, at the time, [plaintiff] . . . interposed his motion for 'purposes of delay'"); *Lancellotti v. Fay*, 909 F.2d 15, 18–19 (1st Cir. 1990)

---

[21] Shorn of the claims based on the frivolous legal theories and falsehoods, little remains of the Complaint—except for claims relating to allegedly excessive fees on the Loans. Although Velocity argues in its Reply that these were frivolous too, [Doc. No. 28 at 6], it did not squarely raise the argument in its initial motion served under Rule 11(c)(2). The Court will not sanction Nantasket, Attorney David, or the Firm for those excessive fee claims. That said, the claims were manifestly weak, with Nantasket failing to address Velocity's argument that the claims could not be brought against Velocity because it was evidently not the note holder or lender at the relevant times. By all appearances, Nantasket lacked valid grounds to bring the excessive fee claims against Velocity.

("Rule [11] has rather consistently been read by federal appellate courts to reach . . . [pleadings] which, while not devoid of all merit, were filed for some malign purpose.").

I also find as persuasive several out-of-circuit district court opinions that have considered the issue under similar factual circumstances. *See, Deutsche Bank Nat'l Tr. Co. as Tr. for DSLA Mortg. Loan Tr. 2004-AR4 v. Loudon*, No. 18-cv-2507, 2019 WL 13267307, at *2 (S.D. Cal. Feb. 19, 2019) (finding that plaintiffs "filed their notice of removal for an improper purpose in violation of Rule 11(b)(1), namely, to gain an illicit advantage over their opponents and delay foreclosure and eviction. While wanting to avoid foreclosure and eviction are very understandable motives, using unlawful means to delay them is not allowed"); *Gutierrez v. Bank of Am., N.A.*, No. 14-cv-01246, 2015 WL 1021438, at *4 (E.D. Cal. Mar. 9, 2015) ("It is clear that [p]laintiffs are attempting to delay the foreclosure of the [s]ubject [p]roperty by filing multiple complaints seeking to overturn the foreclosure. The courts are not vehicles for hindering proper foreclosure proceedings that occur due to the plaintiffs' default on their mortgage." (cleaned up)); *Myers v. Am.'s Servicing Co.*, 227 F.R.D. 268, 269 (E.D. Va. 2005) (awarding sanctions after having found plaintiff's frivolous "pleadings to be indicative of an improper purpose," when she had "repeatedly filed lawsuits or instituted proceedings in federal and state court when there was a foreclosure sale scheduled for their property").

## IV.    CONCLUSION

For the above reasons, Velocity's Motion to Dismiss and Motion for Sanctions are <u>GRANTED</u>, and Nantasket's Motion for Preliminary Injunction is <u>DENIED</u>. Nantasket's claims against Velocity are dismissed with prejudice. Reasonable attorneys' fees and costs will be awarded to Velocity for the time and monies it was forced to expend to oppose Nantasket's Motion for Preliminary Injunction and filing its Motion to Dismiss and Motion for Sanctions.

Velocity shall submit their fees and costs request by August 9, 2024. Any opposition to this request shall be due fourteen days later. The Clerk is also directed to provide the Board of Bar Overseers of the Commonwealth of Massachusetts a copy of this decision, and a transcript of the hearing on February 15, 2024, for its consideration.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge